**IN THE COURT OF APPEALS OF IOWA**

No. 15-0052
Filed March 25, 2015

**IN THE INTEREST OF J.M. AND A.D.,**
**Minor Children,**

**T.B., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Woodbury County, Julie Schumacher, District Associate Judge.

A mother appeals the juvenile court's order terminating her parental rights to her two children. **AFFIRMED.**

Jessica R. Noll of Deck Law, L.L.P., Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Patrick Jennings, County Attorney, and J. Aaron Kirsch, Assistant County Attorney, for appellee State.

Mercedes Ivener, Sioux City, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

A mother appeals the juvenile court's order terminating her parental rights to her two children.

**I. Factual and Procedural Background**

The mother's first child, A.D., was born on December 14, 2007. A.D.'s father was no longer involved with the mother and A.D. by the time A.D. was two years old.[1] In early 2013, A.D. came to the attention of the Iowa Department of Human Services (DHS). The mother and her new paramour were alleged to be using drugs in A.D.'s presence. When DHS interviewed the mother and her paramour, the mother was "incoherent," and her paramour "became irate, storming in and out of the apartment," at times taking hold of a butcher knife or screwdriver. A.D. was removed from the home. The mother was pregnant with J.M. at the time and tested positive for marijuana and methamphetamine. Her paramour tested positive for amphetamines, methamphetamine, marijuana, cocaine, and opiates. A.D. tested positive for methamphetamine.

A.D. was adjudicated a child in need of assistance (CINA) on May 10, 2013. J.M., who was born on May 4, 2013, was adjudicated CINA on June 7, 2013. The mother retained custody of J.M. and regained custody of A.D. conditioned upon her continued participation in treatment services. The mother participated in services, but according to service providers, she made little progress in correcting the circumstances that led to the children's CINA adjudications. Providers struggled to convince the mother to acknowledge that she needed to address the issues regarding her substance abuse. On October

---

[1] The parental rights of the father were also terminated. He does not appeal.

16, 2013, the juvenile court removed the children from the mother's care and placed them with a relative. The mother entered a half-way house treatment program for her substance abuse and continued her ongoing relationship with her paramour, J.M.'s putative father,[2] who continued to abuse illegal substances. The mother continued to participate in services.

On June 4, 2014, the children were returned to the mother's care for a trial home visit. She claimed to have completely ceased contact with her paramour. The children remained with the mother until July 11, 2014. On that date, two service providers made an unannounced visit to the mother's apartment. The providers heard a man's voice coming from inside. The mother denied that anyone other than herself and her children were in the apartment. The providers searched the apartment and found the paramour hiding in the furnace closet. One of the providers and the children's former foster parent identified the paramour, but the mother insisted the man hiding in the closet was someone else. Several of the paramour's belongings were found in the apartment, and A.D. later confirmed to service providers that the paramour had been residing in the apartment with them. A.D. told providers the mother and paramour commonly fought.[3] Both children were removed from the mother's care.

The State filed its termination petition on September 16, 2014. A termination hearing was held on November 20, 2014. At the hearing, the mother

---

[2] The court terminated the parental rights of J.M.'s putative father, but he does not appeal.
[3] The juvenile court noted the mother had a black eye during this period of time. The mother asserted a friend gave her the black eye but would not provide any details regarding when or where the injury occurred. The juvenile court did not find her explanation credible, and it noted "domestic abuse and co-dependency" were ongoing concerns that made it impossible for the mother to "maintain a safe and healthy living environment for the children."

testified the man found in her closet had been her paramour, her paramour continued to abuse illegal substances, and the children's exposure to the substances was dangerous. However, she continued to deny that the paramour had been living with her and the children. She testified she was again pregnant with the paramour's second child; her due date was in fact the day of the hearing. She admitted that she had lied about ending her relationship with her paramour. At the time of the hearing, her paramour was incarcerated. Her landlord had asked her to move out, threatening to evict her if she failed to do so. She had made no arrangements to move.

The DHS case manager also testified at the hearing. She recommended the mother's parental rights be terminated. She testified:

> [The mother] has always participated in services. However, her inability to internalize the information that she gets and to make changes in her life, she doesn't seem to be able to do that. For instance, she's been through [the treatment program] Women and Children's. She's been through Marienne Manor. She's done outpatient treatment yet she's still at the contemplative stage of treatment, and it's been over a year.
> . . . .
> We've had reports from people throughout the case that she was having ongoing contact [with her paramour], however, nothing to verify it until July when he was found hiding in her apartment. . . . So the ability to keep the kids safe and make healthy choices is my main priority. I think that's the main concern I have, and that's not something that I can teach. That's something she has to consciously make a decision to do, and she hasn't done it since April of 2013.

The juvenile court terminated the mother's parental rights to both children in a December 26, 2014 order. It relied on Iowa Code section 232.116(1)(d) (2013) as grounds to terminate as to both A.D. and J.M., section 232.116(1)(h) as to J.M., and section 232.116(1)(i) as to A.D. The mother appeals.

**II. Standard of Review**

We review the juvenile court's termination order de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

**III. Discussion**

On our de novo review, we follow a three-step analysis: first, we determine "if a ground for termination exists under section 232.116(1)"; second, we consider whether termination is in the child's best interest as defined in section 232.116(2);[4] third, we consider whether any of the factors in section 232.116(3)[5] weigh against termination such that we should decline to terminate. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). As to the first step, we may affirm if any one of the grounds relied upon by the juvenile court is supported by clear and convincing evidence. *See In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010). "Evidence is 'clear and convincing' when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* at 706.

The juvenile court relied upon Iowa Code section 232.116(1)(h) to terminate the mother's rights to J.M. Section 232.116(1)(h) provides the juvenile court may terminate if all of the following have occurred:

---

[4] To determine whether termination is in the child's best interests, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

[5] Iowa Code section 232.116(3) provides in relevant part:
> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> a. A relative has legal custody of the child.
> . . . .
> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

> (1) The child is three years of age or younger.
>
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

There is no dispute the first two prongs of paragraph (h) are satisfied. The third prong has been satisfied because J.M. was removed from his mother's care for approximately eleven of the twelve months prior to the juvenile court's termination order.

The mother asserts there is not clear and convincing evidence that J.M. cannot be returned to her custody. However, the presence of the mother's paramour in her residence is sufficient to demonstrate J.M. cannot be returned to her. The risk of J.M.'s exposure to drugs and the volatile paramour are precisely the reasons J.M. was adjudicated a child in need of assistance, and returning him to the mother's care simply reintroduces him into that environment. It is clear the mother has no credible intention of removing the paramour from her life. We affirm the juvenile court's holding that section 232.116(1)(h) supports termination of the mother's rights to J.M.

The juvenile court relied upon section 232.116(1)(i) to terminate the mother's rights to A.D. Section 232.116(1)(i) provides the juvenile court may terminate the mother's rights if all of the following have occurred:

> (1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.

(2) There is clear and convincing evidence that the abuse or neglect posed a significant risk to the life of the child or constituted imminent danger to the child.

(3) There is clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time.

The mother does not dispute the first two prongs of paragraph (i) are satisfied.[6] She argues instead additional services could correct the dangerous conditions. We disagree.

The mother had participated in services for more than a year prior to termination. The record is clear she failed to acknowledge the reality of the dangers to which her behavior exposed A.D. despite her participation in those services. Her service providers did not believe she was taking her treatment seriously, largely because of the mother's statements that she did not need treatment. She continued to choose her paramour over her children throughout the proceedings. The mother had ample time, opportunity, and receipt of services to correct the dangerous conditions; however, she failed to do so. We agree with the district court there is clear and convincing evidence that additional services will not correct the harmful conditions to which A.D. will be exposed in her mother's care.

Having affirmed the juvenile court's reliance on sections 232.116(1)(h) and (i), we also agree it is in the children's best interests to terminate the mother's

_____

[6] The juvenile court issued findings of fact and rulings of law in its CINA adjudication order that demonstrate how A.D. meets the definition of a child in need of assistance under Iowa Code section 232.2(6)(b), which defines a child in need of assistance as one "[w]hose parent . . . has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." When the mother and paramour were discovered to be under the influence of methamphetamine while supposedly caring for A.D., the mother was unable to communicate or behave functionally and the paramour became aggressive, brandishing a screwdriver or a butcher knife. The juvenile court properly relied on these facts in its CINA adjudication order.

parental rights. A.D. has expressed fear and consternation about interacting with her mother's paramour and has stated her mother and the paramour fight with each other. The paramour's continued abuse of methamphetamine is also a danger to the children. Insofar as the mother's testimony at the termination hearing suggested she would end her relationship with her paramour, such testimony is not credible. The record demonstrates the children's safety and physical, mental, and emotional condition will not be served by allowing the mother to retain parental rights. The long-term nurturing and growth of the children will be better served by allowing them to find a permanent placement as soon as possible. Lastly, none of the factors weighing against termination in section 232.116(3) outweigh the dangers posed to the children.

Following our de novo review, we agree with the juvenile court and affirm its termination order.

**AFFIRMED.**